UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN THORNELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:16-cv-00397-JHE |
| ) | |
| PERFORMANCE IMPORTS, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On March 17, 2016, Defendant Performance Imports, LLC filed a motion to compel arbitration and to dismiss, or, in the alternative, stay proceedings.  (Doc. 3).  Plaintiff John Thornell consented to arbitration and requested the Court stay the proceedings pending the outcome of arbitration.  (Doc. 9).  On April 29, 2016, the Court did so.  (Doc. 10).  On June 29, 2016, Defendant moved to have the Court appoint the arbitrator.  (Doc. 11).  Plaintiff opposed the motion.  (Doc. 13).  Upon consideration, Defendant's motion, (doc. 11), is **DENIED**.

**I. Background**

On August 18, 2015, the parties entered into a purchase agreement for a 2003 Ford Mustang.  (Doc. 8-2 at 1).  That agreement contained an arbitration agreement with the following relevant provisions:

> The Arbitration Agreement uses certain defined terms.  "I", "me" and "my" refer to the buyer signing below.  A "Dispute" is any contract, tort, statutory or other claim or dispute between Seller and me arising out of or relating to my credit application, any retail installment sales contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Agreement.)  "Seller" includes seller's assignee and also includes Seller's and such assignee's employees, agents, successors or assigns. "Dispute" includes any disagreement over the interpretation and scope of this clause, or the arbitrability of the Dispute.

1

> Any Dispute shall, at Seller's or my request, be resolved by binding arbitration and not in court. Arbitration will be by one arbitrator on an individual basis and not as a class action. I waive any right I may have to arbitrate a Dispute as a class action (this is referred to below as the "class action waiver"). Arbitration will be conducted by and under the rules of the American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019 (www.adr.org), or any other arbitration organization I select, subject to your approval. I may get the rules of the organization by contacting it or visiting its website.

(Doc. 8-2 at 4; doc. 13-1 at 2). Neither party has challenged the arbitration agreement's validity or applicability to this case. (Doc. 3 at 2-7; doc. 9 at 1).

## II. Analysis

Defendant seeks to have this Court appoint an arbitrator, (doc. 11), presumably under the section of the Federal Arbitration Act that gives courts the power to appoint an arbitrator, where, *inter alia*, a method for appointing an arbitrator is provided in the agreement but "any party thereto shall fail to avail himself of such method." 9 U.S.C. § 5. The dispute between the parties is essentially about whether there is ambiguity in the arbitration agreement's provision for the selection of the arbitration rules and administration and, if so, how it should be interpreted. The disputed sentence states:

> Arbitration will be conducted by and under the rules of the American Arbitration Association, 1633 Broadway, 10th Floor, New York, NY 10019 (www.adr.org), or any other arbitration organization [the buyer] select[s], subject to [the seller's] approval.

(Doc. 8-2 at 4). Defendant contends the arbitration provision's "subject to your approval" language applies to the entire prepositional phrase, not just its second subpart, and, therefore, Plaintiff, by insisting on using the American Arbitration Association, has been effectively refusing to comply with the agreement's method of appointing an arbitrator. (Doc. 11 at ¶¶ 2, 3, & 5[1]). Plaintiff contends the modifying phrase can only reasonably apply to the second part of

---

[1] Defendant's motion accidentally designates paragraph 5 as a second paragraph 3.

the prepositional phrase, meaning the default rules and administration are those of the American Arbitration Association, which Defendant cannot veto. (Doc. 13 at 7-11).

"[S]tate law governs the interpretation and formation of [arbitration] agreements." *Employers Ins. of Wausau v. Bright Metal Specialties, Inc.*, 251 F.3d 1316, 1322 (11th Cir. 2001). When a court is interpreting an arbitration agreement governed by Alabama law, the following general rules of contractual interpretation are applicable:

> [T]he intent of the contracting parties is discerned from the whole of the contract. Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning. If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written. On the other hand, if the court determines that the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction to resolve the ambiguity.

*Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000).

On a purely grammatical level, the disputed sentence could withstand the torture necessary to make it ambiguous. Because the modifier at issue ("subject to your approval") appears at the end of the sentence and is offset by a comma, it would not be grammatically impossible to read it as part of the second alternative phrase, the prepositional phrase as a whole, or the sentence as a whole. However, the sentence is not legally ambiguous because Plaintiff's interpretation of the sentence is, by far, the most natural reading. *See Progressive Specialty Ins. Co. v. Naramore*, 950 So. 2d 1138, 1141 (Ala. 2006) ("In determining whether the language of a contract is ambiguous, courts construe the words according to the interpretation ordinary men would place on the language used therein.") (internal quotation marks omitted).

In Plaintiff's interpretation, the modifier ("subject to your approval") is attached to the word it modifies ("select"), which is both the generally accepted referent and most natural. *See*

3

*Goldberg v. Companion Life Ins. Co.*, 910 F. Supp. 2d 1350, 1351 (M.D. Fla. 2012) ("'When a word such as a pronoun points back to an antecedent or some other referent, the true referent should generally be the closest appropriate word.' . . . '[W]hen modifying words are separated from the words they modify, readers have a hard time processing the information. Indeed, they are likely to attach the modifying language first to a nearby word or phrase.'") (quoting Bryan A. Garner, *Garner's Modern American Usage* 540 (Oxford 2009)). *See also* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 152-53 (Thomson/West 2012) (discussing the Nearest-Reasonable-Referent Canon). Other syntactic canons and rules of interpretation similarly cut against Defendant's interpretation so, even if the Court were to find the sentence ambiguous, Plaintiff's interpretation would prevail. *See* Scalia & Garner, *supra*, at 149 (discussing how, under the Series-Qualifier Canon, the backward reach of a postpositive modifier of a series is generally cut off by a determiner, such as the "any other" used here, before the second item in the series); *McCollough*, 776 So. 2d at 746 (stating that, if all other interpretive measures fail, the text is construed against the drafter).

  Not only is this the most natural reading that jumps to mind first upon reading the sentence, it also leads to the most reasonable result. *See id.* ("[W]here there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms."). Under Plaintiff's interpretation, the agreement gives the buyer the option of choosing either (1) the rules and administration of the default, pre-approved American Arbitration Association, or (2) the rules and administration of any other arbitration organization of which the seller also approves. Defendant's interpretation, on the other hand, creates a situation in which, on the face of the terms, Defendant could veto every arbitration organization

4

Plaintiff selects without any provision for how to break such a stalemate. This would lead to either (1) the untenable result of Defendant having the power to block arbitration by refusing to approve any organization's rules and administration or (2) the need to apply outside correctives (such as an unstated, judicially implied duty of good faith in exercising the approval power, or the statutory power of the court to appoint an arbitrator under 9 U.S.C. § 5). Neither an unaddressed stalemate nor an implied resort to outside remedies would be the expected intent of the contracting parties—especially in light of the language itself supporting a more reasonable interpretation that creates a default, pre-approved organization to provide rules and administration in the absence of other agreement and does not require the courts to meddle with the contractual relationship.

### III. Conclusion

Because the plain language and most reasonable interpretation of the contract leads to the conclusion Defendant's power of veto only extends to Plaintiff's opportunity to choose an organization other than the American Arbitration Association, there is no indication Plaintiff has refused to comply with the arbitration agreement's provision for selecting an arbitrator. Accordingly, Defendant's motion, (doc. 11), is **DENIED**.

DONE this 3rd day of August 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE