UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JOHN THORNELL, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:16-cv-00397-JHE |
| PERFORMANCE IMPORTS, LLC, et al. | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

On September 28, 2017, Defendants Khaled Khalidi ("Khalidi") and Performance Imports, LLC ("Performance") moved to set aside defaults previously entered against them, (*see* docs. 28 & 40). (Doc. 56). Plaintiff John Thornell ("Thornell") opposes the motion as it pertains to Performance and states he "does not consent, but takes no position" to the motion as it pertains to Khalidi. (Doc. 61 at 1). Additionally, Thornell has moved for default judgment against both Performance and Khalidi, (docs. 31 & 41), and for sanctions against Performance, (docs. 17 & 51). On November 7, 2017, the undersigned held a hearing on the pending motions. For the reasons set out more fully below, the motion to set aside default is **GRANTED IN PART** and **DENIED IN PART**, the motion for default judgment against Khalidi is **DENIED**, the motion for default judgment against Performance is **DENIED** with leave to refile, and the motions for sanctions are **GRANTED IN PART** and **DENIED IN PART**.

**I. Background**

In August 2015, Thornell purchased a used 2003 Ford Mustang from Performance, an automotive dealer organized as an Alabama limited liability company. Following a dispute over the vehicle's title, Thornell sued Performance in the Circuit Court of Jefferson County, Alabama,

on January 31, 2016, alleging various state law claims and violations of the Federal Truth in Lending Act and Federal Odometer Act. (*See* doc. 1-1). On March 7, 2016, Performance removed the case to this court. (Doc. 1). Ten days after removal, Performance filed a motion to compel arbitration. (Doc. 3). On April 28, 2017, Thornell consented to arbitration. (Doc. 9). The undersigned granted the motion to compel arbitration and stayed this case. (Doc. 10).

Two months passed, during which Performance did not pay its portion of the filing fee required by the American Arbitration Association ("AAA"). (*See* docs. 13-3 & 13-4). As a result, the AAA dismissed the arbitration. (Doc. 13-4). Following the dismissal of the arbitration, on June 29, 2016, Performance filed a motion to appoint an arbitrator, arguing it had not approved the use of the AAA and could refuse to use AAA under the arbitration agreement. (Doc. 11). The undersigned denied that motion on August 3, 2016, and sent the case back to arbitration. (Doc. 14).

On October 26, 2016, Performance's counsel, Amanda Cooks, moved to withdraw, citing her inability to contact her client. (Doc. 15). The undersigned set that motion for a hearing and ordered a representative for Performance to attend, (doc. 16), but no Performance representative showed up. The undersigned ordered Cooks to make additional efforts to communicate with her client and attempt to identify the membership of Performance, (doc. 18); she was still unable to communicate with them, but identified the sole member of Performance as Khalidi, (*see* doc. 19). On January 30, 2017, the undersigned gave Performance ten days to show cause why Cooks' motion should not be granted. (Doc. 21). The order contained the following warning:

> A failure to reply could result in the undersigned granting Cook's motion. Defendant is further notified that a corporation, being an artificial entity, can only be represented by licensed counsel in proceedings such as this. *See Rowland v. California Men's Colony, Unit II Men's Advisory Counsel*, 506 U.S. 194, 202, 113 S. Ct. 716, 121 L. Ed. 2d 656 (1993); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381,

2

1385 (11th Cir. 1985), *cert. denied*, 474 U.S. 1058, 106 S. Ct. 799, 88 L. Ed. 2d 775 (1986); *Southwest Express Co. v. Interstate Commerce Commission*, 670 F.2d 53, 55 (5th Cir. 1982). If the motion to withdraw is granted and Defendant fails to find substitute counsel, Defendant risks a default judgment against it as an unrepresented corporation. *See, e.g., Armadillo Distribution Enterprises, Inc., v. Hai Yun Musical Instruments Mfg. Co. Ltd.*, 142 F. Supp. 3d 1245 (M.D. Fla. November 5, 2015); *Davis v. Lane Management, LLC*, 524 F. Supp. 2d 1375 (S.D. Fla. November 6, 2007); *Delta Air Lines, Inc. v. Wunder,* No. 1:13-CV-3388-MHC, 2016 WL 4157349 (N.D. Ga. Apr. 14, 2016).

(Doc. 21 at 1-2). The order was mailed to Khalidi at both addresses listed on the Alabama Secretary of State's Business Entity Records website: Performance's business address and the address listed for Khalidi as the LLC's registered agent, on Bristol Lane in Birmingham, Alabama. (*See* doc. 21 at 2 n.1; staff note between doc. 21 & 22).

Performance did not respond to that order, and on February 14, 2017, the undersigned granted Cooks' motion to withdraw. (Doc. 22). In the same order, the undersigned gave Performance an additional thirty days to find counsel, with the following warning: "Defendant is again reminded as an artificial entity, it **must** be represented by counsel. Therefore, Defendant has **thirty (30)** days to find new counsel. **Failure to find new counsel by that deadline may result in a default judgment against Defendant.**" (*Id.* at 2) (emphasis in original). Again, the order was mailed to Khalidi at both addresses. (*See* staff note between docs. 22 & 23).

Following that order, Thornell discovered that Performance had dissolved in January 2017—backdating its articles of dissolution to a date prior to the sale at issue in this case—and filed an emergency motion for a hearing. (Doc. 24). The undersigned set a hearing for April 24, 2017, and mailed notice of the hearing to both addresses for Khalidi, (doc. 25); the copy sent to Performance Imports' business address was returned as undeliverable with the notation "no longer here," (doc. 26). Khalidi did not attend the hearing, nor did any other representative of Performance Imports. On April 24, 2017, the undersigned directed the Clerk to enter default

3

against Performance as an unrepresented artificial entity, (doc. 27), and default was entered the same day, (doc. 28). The entry of default was also mailed to both addresses, (*see* staff note between docs. 28 & 29), but the copy sent to Performance's business address was returned as undeliverable, (doc. 29). On May 17, 2017, Thornell moved for a default judgment against Performance. (Doc. 31).

Thornell moved for leave to amend his complaint to add a count of fraud and a count of conspiracy against Khalidi and Hazim Mahmoud, (doc. 30), and the undersigned granted that motion, (doc. 32). Khalidi was served on July 11, 2017, (docs. 35 & 38), but did not file his answer on time; as a result, default was entered against him. (Doc. 40). Khalidi and Mahmoud filed a combined, one-page pro se answer on August 9, 2017 (eight days after Khalidi's answer was due). (Doc. 42).

Following their pro se answer, all Defendants retained the same new counsel. The case remains stayed for arbitration.

## II. Standard of Review

Under Rule 55(c), "[t]he court may set aside an entry of default for good cause . . . ." FED. R. CIV. P. 55(c). "'Good cause' is a mutable standard, varying from situation to situation." *Compania Interamericana Export–Import, S.A. v. Compania Dominicana*, 88 F.3d 948, 951 (11th Cir. 1996) (quoting *Coon v. Grenier*, 867 F.2d 73, 76 (1st Cir. 1989)). In determining whether "good cause" has been shown, courts have considered the following: (1) whether the default was culpable or willful; (2) whether setting it aside would prejudice the adversary, (3) whether the defaulting party presents a meritorious defense; (4) whether there was significant financial loss to the defaulting party; and (5) whether the defaulting party acted promptly to correct the default. *Id.*

4

The defaulting party bears the burden of establishing good cause. *Insituform Technologies, Inc. v. AMerik Supplies, Inc.*, 588 F. Supp. 2d 1349, 1352 (N.D. Ga. 2008) (citation omitted).

The Eleventh Circuit has expressed "a strong policy of determining cases on their merits," and consequently defaults are disfavored. *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003). Therefore, any doubts about whether to set aside an entry default are resolved in favor of the party seeking to set aside default. *Insituform Technologies*, 568 F. Supp. 2d at 1352 (citing *Davis v. Parkhill–Goodloe Co.*, 302 F.2d 489, 495 (5th Cir. 1962)).[1] However, when a "party willfully defaults by displaying either an intentional or reckless disregard for the judicial proceedings, the court need make no other findings in denying relief," and "when a litigant has been given ample opportunity to comply with court orders but fails to effect any compliance, the result may be deemed willful." *Compania Interamericana*, 88 F.3d at 951–52.

### III. Discussion

Although both parties seek relief through the same motion, the entries of default against Performance and Khalidi are factually dissimilar. Each is considered separately below.

#### A. Motion to Set Aside Default (Doc. 56) & Motion for Default Judgment (Doc. 41) - Khalidi

Khalidi's main argument in favor of setting aside the entry of default against him is that he was hospitalized when he was served with the complaint, having had open heart surgery four days prior to service, and filed his answer only eight days later. (Doc. 56 at 11, 14). In support of that, he has enclosed hospital records, albeit in unauthenticated form. (Doc. 57-5). Khalidi's health

---

[1] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

5

problems and the relatively short period of time between his default and his attempt to correct the default indicate that there is good cause to set aside his default. Additionally, the undersigned interprets Thornell's statement that he "takes no position to Khalidi's Motion," (doc. 61 at 1), as non-opposition to setting aside Khalidi's default. Therefore, the motion to set aside default is **GRANTED** as it pertains to Khalidi's default, and Thornell's pending motion for default judgment against Khalidi is **DENIED.**

### B. Motion to Set Aside Default (Doc. 56) - Performance

Performance offers several reasons why its default should be set aside, covering all five of the criteria set out in *Compania Interamericana.* Because the undersigned concludes Performance's actions were willful and the willfulness of Performance's actions is dispositive of whether good cause exists to set aside its default, only that factor is considered below.

Unless its actions are otherwise excusable, there is little doubt Performance's conduct was willful given that it was provided "ample opportunity to comply with court orders but fail[ed] to effect any compliance." *Compania Interamericana*, 88 F.3d at 952. As described above, between October 26, 2016 and August 9, 2017, Performance did not participate in this case in any way despite receiving orders directing it to appear at a hearing, (*see* doc. 25), and find counsel, (*see* docs. 22). Further, Performance was aware that the consequences of failing to find counsel included a default judgment against it; those consequences were stated in the order to show cause why its counsel should not be permitted to withdraw, (*see* doc. 21), and restated—in bold, underlined text—in the order permitting it thirty days to find counsel, (*see* doc. 22). At a minimum, Performance's conduct evinces the sort of "reckless disregard for the judicial proceedings," *Compania Interamericana*, 88 F.3d at 951, that would support a finding of willfulness absent some compelling justification.

Performance offers three excuses for its conduct, each purporting to negate either its awareness of the orders or its ability to respond to them. First, it cites the health problems of Mahmoud, Mahmoud's wife, and Khalidi. Second, it argues Khalidi failed to receive the order directing the Clerk to enter default against Performance and the entry of default itself. Finally, it suggests confusion over the ownership of Performance impaired its response. None of these excuses is sufficient.

First, none of the health problems Performance cites appear to bear on its willfulness, as none occurred during the time period when Performance ceased participating in this case. Mahmoud's struggles with stage III thyroid cancer apparently began in November 2015; as a result, he had thyroidectomies in January 2016. (Doc. 56 at 11). In the following seven months, Performance removed this case from state court to federal court on March 7, 2016, (doc. 1); moved to compel arbitration on March 17, 2016, (doc. 3); moved to appoint an arbitrator after the first arbitration was dismissed for Performance's failure to pay its portion of the fee on June 29, 2016, (doc. 11); and went back to arbitration after the undersigned denied the motion to appoint an arbitrator (where Performance again failed to pay the portion of the fee it owed). Performance ceased responding to its counsel and to the court orders which were mailed to its business address; it did not attempt to communicate with the court again until August 2017, when it purported to answer the complaint. Mahmoud's wife's health problems apparently occurred in April 2016, while Performance was actively participating in the case. (Doc. 56 at 12). And Khalidi's health problems, as discussed above, postdate Performance's inactivity, occurring months after default was entered against Performance. There is no apparent connection between the health problems Performance identifies and anything giving rise to its default.

Performance's argument Khalidi did not receive the court's orders is also unavailing. Performance points to Khalidi's failure to receive the order directing the Clerk to enter default, (doc. 27), and the entry of default itself, (doc. 28), which were indeed returned to the court as undeliverable as to Performance's business address. (*See* doc. 29). However, when Performance's default was entered, it had already declined to respond to the order requiring Performance to show cause why Cooks' motion to withdraw should not be granted, (doc. 21), and the order granting the motion to withdraw and requiring Performance to find new counsel, (doc. 22), neither of which Performance contends it did not receive. Performance cannot argue it was not on notice its failure to find counsel would potentially place it in default when both of these orders explicitly stated that. Additionally, staff notes between docs. 28 and 29 indicate the documents Performance argues Khalidi did not receive were also mailed to Khalidi's Bristol Lane address, where Khalidi was eventually served after being added as a defendant. Performance does not account for this at all, and there is no reason to conclude Khalidi did not receive them notwithstanding the mail returned by Performance.

Finally, the alleged confusion over Performance's ownership does not justify its refusal to respond to court orders. Performance indicates Mahmoud and Khalidi were negotiating the sale of Performance "around the time when the Plaintiff's transaction was made," (doc. 56 at 14), creating uncertainty that negates that it acted willfully. However, Performance was an active participant in the lawsuit for much of 2016 notwithstanding this alleged uncertainty. And Performance never disputes Khalidi was its sole member during the entirety of the period in which the conduct that gave rise to the entry of default occurred (at least until Performance dissolved), nor that Khalidi received (as discussed above) the orders Performance ignored. Nor does Performance deny Mahmoud was also Performance's agent. It is immaterial Mahmoud and

8

Khalidi were negotiating the sale of the company, especially when Performance continued to engage in business as usual during those negotiations (and still, apparently, engages in business as usual despite its purported dissolution (*see* doc. 61 at 17; doc. 61-1 at 2-3). The fact neither Mahmoud nor Khalidi allegedly knew which of them was responsible for responding does not mean they did not know *someone* at Performance was obligated to respond.

In addition to the inadequacy of Performances' excuses for ignoring the court's orders, Thornell points to Performance's failure to pay its portion of the arbitration fees as evidence of its willfulness. The undersigned notes two orders compelling arbitration have been entered in this case, (docs. 10 & 14), and Performance effectively disregarded those orders by failing to pay the arbitration fees both times. The undersigned agrees Performance's disregard of its obligations in arbitration—which it itself initiated—suggests its conduct in this case was less benign than it claims, and its rationales for that conduct are less convincing due to its failure to follow previous orders.

Because the undersigned finds Performance's conduct was willful, its default is not due to be set aside. Therefore, the motion to set aside default is **DENIED** as to Performance.

### C. Motions for Sanctions (Docs. 17 & 41) – Performance

Thornell's motion for sanctions requests that sanctions be imposed against Performance for failing to pay arbitration fees and thus violating the order compelling arbitration. (*See* doc. 17). It also requests the stay in this case be lifted and arbitration deemed waived. (*Id.* at 8-14). Thornell has also renewed the motion for sanctions. (Doc. 51). Because the far more severe sanction of default has been imposed on Performance, partially on the same basis as the conduct for which Thornell seeks separate sanctions, the motion is **DENIED** as to additional sanctions against Performance. However, the defendants conceded at the November 7, 2017 hearing that

9

they no longer seek arbitration in this case. Therefore, the motion is **GRANTED IN PART** to the extent that the stay is **LIFTED** and arbitration is deemed waived. The parties are **DIRECTED** to meet and confer pursuant to Fed. R. Civ. P. 26(f). The parties' report of their planning meeting is due by **February 28, 2018**.

### D. Motion for Default Judgment (Doc. 31) — Performance

Thornell's motion for default judgment against Performance, (doc. 31), was filed on May 17, 2017. Because this case is in a substantially different posture than it was at that time, particularly in terms of the billable hours Thornell's counsel has likely expended, (*see* doc. 31 at 9-23), the motion for default judgment is **DENIED** with leave to refile by **February 28, 2018**.

### IV. Conclusion

As stated above, Performance and Khalidi's motion to set aside default, (doc. 56), is **GRANTED IN PART** to the extent that the entry of default against Khalidi, (doc. 40), is **SET ASIDE,** and **DENIED** in all other respects. Thornell's motions for sanctions, (docs. 17 & 41), are **GRANTED IN PART** to the extent that the stay currently in effect in this case is **LIFTED**, and **DENIED** to the extent they request other relief. The remaining parties are **DIRECTED** to meet and confer pursuant to Fed. R. Civ. P. 26(f) and submit their report of their planning meeting by **February 28, 2018**. Thornell's motion for default judgment against Performance, (doc. 31), is **DENIED** with leave to refile by **February 28, 2018**.

DONE this 7th day of February, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE